Joseph H. BALLARD and Judith Carol Ballard, Appellants,

v.

LEONARD BROTHERS TRANSPORT CO., INC., Respondent.

No. 57639.

Supreme Court of Missouri, Division No. 2.

March 11, 1974.

Robert L. Shirkey, Paul Crider, Jr., Kansas City, for appellants.

R. Lawrence Ward, Shughart, Thomson & Kilroy, Kansas City, for respondent.

HENRY I. EAGER, Special Commissioner.

This is an action for damages arising out of personal injuries to plaintiff Joseph H. Ballard. In the first count he seeks his own damages; in the second, his wife seeks damages for loss of society and consortium. They appeal from an adverse judgment. The negligence alleged was in the furnishing by defendant for plaintiff's use (and we refer as such to the husband) of a commercial trailer with a defective floor, causing plaintiff to step through a hole in the floor while loading it. The details of the alleged negligence and of the injuries are immaterial here. The plaintiffs sought, respectively, $75,000 and $25,000, the notice of appeal was filed before January 1, 1972, and we have jurisdiction. The trial court rendered summary judgment for the defendant. The original answer, in addition to denials, pleaded

plaintiff's own negligence as causative or contributory. An amended answer pleaded the further defense that plaintiff was subject to the Missouri Workmen's Compensation Act, Chapter 287, RSMo 1969, V.A. M.S.,[1] and that whatever rights and remedies he and his wife might have arose solely under the said Act and that they are "completely barred as a matter of law from maintaining this action." This latter defense constitutes the basic, and really the only, question on this appeal. Put more specifically, defendant contends that plaintiff was its employee under the so-called "borrowed servant" doctrine, that both defendant and plaintiff were operating under the Workmen's Compensation Law, and that plaintiff's only possible remedies are those provided by the Act. The Court entered its judgment upon the pleadings, the deposition of plaintiff, the interrogatories and answers, and the exhibits attached to defendant's motion. We shall state the facts as they may be gleaned from those documents. Most of the facts come from plaintiff's deposition.

Plaintiff had been a truck driver for some years when he was employed by Harris Motor Service of Kansas City on July 1, 1968; he testified that he left that employment on July 1, 1970; he was a member of the Teamsters' Union. It appears that plaintiff was inactive because of his injury from July 18, 1969 to January 7, 1970, but that his work and the nature and control thereof, as described, continued until its final termination on July 1, 1970. He stated that he quit work in July, 1969, because his back was hurting too much as a result of his injury. The testimony showed that Harris (as we shall refer to that entity) owned several tractors and employed about seven drivers; that Harris "hired the tractors out" to others to haul their trailers and merchandise, *along with the drivers;* that Harris leased the tractors. Harris owned no trailers. Plaintiff's driving, throughout his employment, was "mostly" with trailers of defendant

Leonard Brothers; he did general hauling for Leonard Brothers, divided between intown hauling and trips to and from Lawrence and Topeka, Kansas; these were van-type trailers, generally about 40 feet long. Specifically, plaintiff testified that during this two year period *all of his pickups were for Leonard Brothers.* Counsel for plaintiff concede in their brief that during the two years in question "all of his pickups were for Leonard Brothers." Plaintiff went to Harris's on "most mornings," picked up a tractor, drove to Leonard Brothers' dock at 520 Madison in Kansas City, Missouri, and reported to Joe Lock, Leonard's terminal manager (as indeed the other drivers did), who then gave him instructions, ususally written, on his work for the day; frequently he loaded his trailer at the Leonard dock and delivered the freight elsewhere; at other times he left to pick up freight. Much of the time he hauled paper from the Lawrence Paper Company at Lawrence, Kansas, delivering it to Leonard's; he also hauled much general freight, in Kansas City and outside, all for Leonard Brothers; at times he loaded or unloaded his freight or helped to do so. Mr. Harris never came over to Leonard Brothers to direct his work; in fact, plaintiff did not report in at Harris's in the morning, but simply picked up his tractor and went to Leonard Brothers. This was his practice for the two years. He usually took the tractor back to Harris's at night but sometimes (about 10% of the time) left it at Leonard's. Plaintiff testified that he looked to Joe Lock, Leonard's terminal manager, for his "daily direction on where to go, what to pick up and things of that nature." He did not report back to Harris on "what type" of work he was doing, and he filed no reports with Harris. He turned in his time card to Harris once a week and was paid by Harris. Plaintiff "had insurance" through Harris but did not know about Blue Cross and Blue Shield. Sometimes a dispatcher at Leonard Brothers would tell him where to go

---

1. To which edition all statutory references will refer.

and what to do; this man worked under Lock. Leonard had 15–20 trailers of the van type. For the trip on which plaintiff was injured Lock directed him specifically which trailer to take, because it had a large door. The injury occurred while plaintiff (on a trip for Leonard) and another man were pushing a very large construction tire, weighing perhaps 1,000 pounds, into the trailer. The petition alleged a fall while unloading a trailer, but plaintiff's testimony in his deposition was as above stated. The difference is wholly immaterial to our issue. Plaintiff generally worked a five-day, forty-hour week, with considerable overtime, all being on Leonard Brothers' business. Plaintiff had done other driving for Leonard on the day of his injury. He frequently switched trailers during the day from loaded to unloaded and vice versa. Lock usually told plaintiff what trailer to take and use. Plaintiff said that he reported his injury orally to Lock. He later reported it to Harris. He apparently continued to work for about two weeks after the injury, but finally told Lock that he would have to quit.

In answers to interrogatories, plaintiff stated: that he was employed by Harris Motor Service; that Leonard Brothers owned the trailer in question; that he knew of no "lease"; that he had made claim for Workmen's Compensation from Harris; that the trailer in question bore the name of Leonard Brothers. In answer to plaintiff's interrogatories, defendant stated that it had no records to show whether plaintiff worked on its premises on July 1, 1969, or in or about a trailer owned by it, and that its "personnel" could not recall; that it did not receive notice of the injury; that plaintiff was on the payroll of Harris, but that while working on defendant's premises he was under the supervision of Joe Lock who was defendant's terminal manager; that his duties were to operate tractors *leased* to defendant by Harris and to load and unload trailers; that according to defendant's personnel a trailer shipped from Lawrence, Kansas, on June 30, 1969, could have been unloaded at defendant's premises on July 1, 1969, describing that trailer.

Plaintiff filed a claim for compensation against Harris Motor Service and its insurer, in September, 1969; the claim was officially compromised on December 10, 1970, by the payment of a lump sum of $6,000; the order recited the prior payment of $1,710 as compensation and medical expense of $2,777.08; it also recited that the dispute which existed was as to the nature and extent of disability. This defendant, Leonard, was not included in that claim, nor were any independent compensation proceedings filed against it.

Defendant's amended answer was filed on October 5, 1971, with a motion requesting leave to file it. The order granting leave was incorporated into the subsequent judgment, but the leave was granted as of the date of filing, October 5. Notice of the amendment may be considered as being given as of that date; no point is raised on that. Defendant's motion for summary judgment was filed on October 5, 1971, with the record of plaintiff's compensation claim and a copy of plaintiff's deposition as exhibits; rather elaborate suggestions were filed concurrently in support thereof. Plaintiff was given time to November 22, 1971, to file opposing suggestions and did file such. He filed no affidavits or other opposing evidence. Additional interrogatories were filed by defendant on November 17, 1971, but these merely sought to bring the prior interrogatories up to date. On November 23, 1971, plaintiff filed a "Motion For Discovery and Production Of Documents" which asked for the records concerning all operations of plaintiff during June and July, 1969, including trailer numbers, repairs and defects. Similar information had been requested in supplemental interrogatories filed by plaintiff on July 23, 1971, to which defendant's objections had been sustained on the ground that they were not relevant and were oppressive in scope, in view of defendant's prior answers. The objections were

briefed pro and con. The motion for discovery was not ruled upon.

On December 14, 1971, the Court entered its summary judgment pursuant to defendant's motion. Therein it found that plaintiff's time to oppose such motion had been extended, that his suggestions had been filed, and that neither party had requested oral argument; it further found: that no affidavits or other support had been filed by plaintiff in opposition to the motion (Rule 74.04) or to show that a genuine issue of fact existed; that upon examination of the pleadings, the deposition of plaintiff, answers to interrogatories and exhibits, it found that there was no genuine issue of material fact, and it rendered judgment accordingly.

We do not consider that the pendency of plaintiff's motion for discovery, without a ruling, is an essential element here, for the Court had already ruled that interrogatories to substantially the same effect were improper. Moreover, the matters sought therein were applicable to the issue of negligence, and could have had no substantial bearing on our question.

■ The question here is whether, under Rule 74.04, there existed any "genuine issue as to any material fact"; more specifically, did any material fact issue remain on defendant's contention that plaintiff was employed by Leonard Brothers as a borrowed servant? There is no question here that both plaintiff and defendant were subject to Chapter 287, our Workmen's Compensation Act. Section 287.120(2) provides: "The rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee, his wife, her husband, parents, personal representatives, dependents, heirs or next of kin, at common law or otherwise, on account of such accidental injury or death, except such rights and remedies as are not provided for by this chapter." It is axiomatic that an employee (or an employer by subrogation) may sue at common law a "third person" who has caused or is responsible for an injury which is compensable under the Act. But such a "third person" is "one upon whom no liability could be entailed under the Act." Schumacher v. Leslie, 360 Mo. 1238, 232 S.W.2d 913, 1. c. 918 (1950), citing cases; Hanson v. Norton, 340 Mo. 1012, 103 S.W.2d 1 (1937). It follows that if defendant Leonard was plaintiff's employer, then it was not a third person and the present suit may not be maintained. The issue here, as stated, involves the "borrowed servant" doctrine, upon which much has been written.

■ The essential elements constituting a "borrowed servant" relationship have been stated several times. Essentially, they are: "(a) consent on the part of the employee to work for the special employer; (b) actual entry by the employee upon the work of and for the special master pursuant to an express or implied contract so to do; and (c) power of the special employer to control the details of the work to be performed and to determine how the work shall be done and whether it shall stop or continue." Ellegood v. Brashear Freight Lines, Inc., 236 Mo.App. 971, 162 S.W.2d 628 (1942); Feldmann v. Dot Delivery Service, 425 S.W.2d 491 (Mo.App.1968). Slightly differently worded definitions have been stated, Dickhaut v. Bilyeu Refrigerated Transport Corp., 441 S.W.2d 54, 1. c. 57 (Mo.1969), 1A Larson's Workmen's Compensation Law, § 48.10, but essentially the requirements as variously stated coincide. Defendant has cited eight cases as supporting its theory; plaintiff has cited four of the same ones, three for the making of supposed distinctions. We have deemed it necessary to research further and have found perhaps a dozen additional cases which are more or less applicable.

■ We shall not attempt to compare the facts of the various cases (with one exception) with the facts of the present case. It will be sufficient to state the rules which they announce. The basic requirements of the borrowed servant relationship, as stated above, are recognized

also in Bradshaw v. Richardson Trucks, Inc., 467 S.W.2d 945 (Mo.Banc 1971); Andra v. St. Louis Fire Door Co., 287 S. W.2d 816 (Mo.1956); Ferguson v. Air-Hydraulics Co., 492 S.W.2d 130 (Mo.App. 1973); Stroud v. Zuzich, 271 S.W.2d 549 (Mo.1954); McFarland v. Dixie Machinery & Equipment Co., 348 Mo. 341, 153 S. W.2d 67 (1941); Schepp v. Mid City Trucking Co., 291 S.W.2d 633 (Mo.App. 1956); Hargis v. United Transports, Inc., 274 S.W.2d 339 (Mo.App.1955), and Patton v. Patton, 308 S.W.2d 739 (Mo.1958). The following principles also appear to be accepted: in the leasing of equipment and operators to another, the mere fact that the general employer continues to pay the operator's wages, the gas, oil and other expense, and is responsible for maintenance, does *not* prevent the operator from becoming an employee of the lessee. Ellegood, Feldmann, Bradshaw, McFarland and Larson, § 48.30. In this connection Larson says, re wages, that the special employer ultimately pays these anyway, through his lease or contract payments. The consent of the employee may be implied from his action in proceeding with the employment, his general acceptance of it, and his obedience to orders, Ellegood, Feldmann, Stroud, Patton, Larson, although the consent must be deliberate and informed. Larson. No express or implied contract between the employee and the special employer need necessarily be shown, since § 287.020 provides that an employee may also be one in service under "any appointment or election." Feldmann, Ellegood. The relationship between the employee and the special employer may be implied from the course of conduct, the consent of the employee to the work, and his acceptance by the special employer. Mercer v. Rowe Ford Sales, 446 S.W.2d 167 (Mo.App. 1969); Bradshaw, supra. And a contract may be implied. Wright v. Habco, Inc., 419 S.W.2d 34 (Mo.1967), to be discussed later. The right of control of the special employer must be the authoritative right to direct the details of the work and the employee's physical activities. McFarland, Stroud, Patton, Ellegood, Dickhaut, supra. The employee must be working on the business of the special employer; this principle is more or less implicit in all of the cases.

The case which we deem to be controlling here is Wright v. Habco, Inc., 419 S. W.2d 34 (Mo.1967), not cited by either party. There, a workman had been sent by "Manpower, Inc." to work on the renovation of a building owned by the defendant. He was in the general employ of Manpower. He reported each morning to the supervisor of the renovation work and was given directions as to what he should do that day; the supervisor there was his "boss." He had so worked for the defendant under that arrangement for several weeks. He only reported back to Manpower once a week to get his pay. At the time of plaintiff's injury he was working on a scaffold, removing pipes, and he fell from the scaffold. Manpower paid his wages, deducted social security, tax withholding, etc., and charged the defendant enough to repay it for its outlays, plus a commission. These facts were developed by interrogatories and answers, depositions, and admissions. Plaintiff understood that in accepting employment with Manpower he would be sent out to work for its customers. Both defendant and plaintiff were subject to the Workmen's Compensation Act; defendant had filed no report of the accident and it had made no payments of compensation. The plaintiff had filed a compensation claim against Manpower. The defendant filed a motion for summary judgment, alleging that on these facts, as demonstrated by the documents referred to, plaintiff was "an employee, or borrowed employee" of the defendant and that his exclusive remedy was under the Workmen's Compensation Law. The trial court sustained that motion and entered judgment for defendant. This Court affirmed, concluding as a matter of law that plaintiff was an employee of the defendant. The Court cited the Ellegood, Patton and

McFarland cases, supra, and several from other states. After discussing the requirements of the loaned servant relationship, the Court said, 419 S.W.2d at l. c. 36: "In considering those requirements as applied to the case before us we think it is quite clear that plaintiff consented to work for defendant and that such was pursuant to an implied contract between them. In this case plaintiff knew when he was hired by Manpower that all of his work would actually be performed for various customers of his general employer. The very fact that he entered into an employment arrangement of that nature would constitute a general consent to work for special employers such as defendant. Also, plaintiff had actually entered upon that work and had performed same under the exclusive direction of defendant's foreman for several weeks before he was injured. Unquestionably, defendant had the power to control the details of the work being performed by plaintiff and had actually exercised that control for several weeks." After discussing certain restrictions made by Manpower concerning the type of work to be performed etc., the Court again said, l. c. 37: "The foregoing restrictions would have no effect upon the right of defendant to control the work in which plaintiff was engaged. He was sent to defendant's building to work as a laborer. The only direction given him by Manpower was to report to defendant for work. Defendant's foreman was his 'boss' in doing that work. The evidence makes it clear that plaintiff consented to work for defendant and actually performed the work under the sole direction of defendant's foreman. We are unable to find any factual issue which should have been presented to a jury." In passing, the Court distinguished certain other Missouri cases and in effect overruled one.

 In our case Harris's business was to furnish tractors and drivers to others, principally to Leonard Brothers; plaintiff knew this and, when employed, immediately entered into the regular operation of tractors for Leonard, under the direction of Leonard's terminal manager. He clearly consented to that arrangement, and the inference is also clear that a contract of employment between plaintiff and Leonard was thus implied. This exclusive work for Leonard continued for two years (although for five or six months he was inactive because of his injury), and until the termination of his general employment with Harris on July 1, 1970. Leonard's right to control the details of plaintiff's work is beyond question, from his own statements in his deposition. No restrictions were made by Harris. As the Court said in Wright, supra, "We are unable to find any factual issue which should have been presented to a jury."

It is noteworthy that the only additional facts which plaintiff says might have been shown are: "the number of employees the defendant may have reported" to its workmen's compensation carrier and to the state and federal governments for employment purposes; the exact nature of the agreement between Harris and defendant; and the fact that it is not shown whether defendant carried compensation insurance on plaintiff, which is essentially a repetition of the first suggestions above. We do not find that plaintiff at any time asked for those disclosures, but in any event such facts could not be determinative of the issue, in the light of the facts developed without controversy and as admissions.

Plaintiff calls attention to the fact that in Bradshaw, supra, the Court said that the issue of employment was one of fact. The Court there merely held that there was a sufficient factual basis for the award of the Industrial Commission and that the Court could not overturn it. In cases involving employment, negligence and countless other matters, the issue usually is in the first instance one of fact; but if all the facts developed lead to one conclusion it is the duty of the Court to make a determination as a matter of law. If plaintiff means to say that upon an issue of employment there always remains a fact question,

then Rule 74.04 would be forever eliminated in such cases. That cannot be the law.

No point has been raised here which would make any issue out of the filing of compensation proceedings by plaintiff against Harris, the payment of compensation, and the final compromise thereof. We need not note those facts further.

We find no error in the ruling of the trial court and the judgment is affirmed.

PER CURIAM:

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.