**Bill J. ERWIN, Appellant,**

v.

**POLAR EXPRESS, INC., Respondent.**

**No. 16204.**

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 11, 1989.

Joe R. Ellis, Cassville, for appellant.

Greg B. Carter and Theresa L. Ohler, Blanchard, Van Fleet, Martin, Robertson & Dermott, Joplin, for respondent.

GREENE, Judge.

This is an appeal from an award of the Labor and Industrial Relations Commission (commission) denying workers' compensation benefits to the appellant, Bill J. Erwin. We affirm.

In his sole point relied on in this appeal, Erwin contends that the commission erred in determining that Erwin was not an em-ployee of the respondent, Polar Express, Inc. (Polar), within the meaning of the Missouri Workers' Compensation Act, as such determination did not rest upon sufficient competent evidence. The standard for review of the findings of the commission, when the challenge is that the award is not supported by competent and substantial evidence, is set out in *Matthews v. Roadway Express, Inc.*, 660 S.W.2d 768, 769 (Mo. App.1983), where the appellate court stated:

> All of the evidence and legitimate inferences therefrom must be viewed in the light most favorable to the award. This court may not substitute its judgment for that of the commission. The award may be set aside only if there is no competent and substantial evidence to support it or if the findings of the commission are clearly contrary to the overwhelming weight of the evidence. Conflicts in the evidence are for resolution by the commission. This court must disregard any evidence which might support a finding different from that of the commission and that is true although a finding of the commission to the contrary would have been supported by the evidence. (Citations omitted.)

Viewed in that light, the evidence was as follows. In 1983, Jerry Gentry Tatum was the owner of two tractor trucks he leased to Polar Express. The trucks were used to pull trailers owned by Polar that were used to haul produce in interstate commerce. There was a provision in the lease that it was Tatum's obligation to provide drivers for the trucks. The lease further provided that all drivers be approved by an officer of Polar. The prospective drivers were required by Polar to take a written test and a driver's test, and submit the results of a recent physical examination, as well as information concerning their prior driving record, as prerequisites to their being approved by Polar as drivers. Jerry Tatum, his son, Scott, and a third individual hired by Jerry, Carol Zilliox, had complied with all of these requirements, and had been approved by Polar Express as drivers of the units in question.

Under the terms of the lease, Jerry Tatum had the option of obtaining a policy of workers' compensation insurance, and supplying Polar with a copy of the policy, or letting Polar secure the coverage, with Jerry Tatum paying the policy premiums. Tatum chose the second option, and Polar secured a policy of insurance from the Argonaut Insurance Company. Coverage in force on April 5, 1983, covered Jerry Tatum, Scott Tatum, and Carol Zilliox.

Jerry Tatum had planned to accompany his son, Scott, on a trip for Polar on April 5, 1983, but became ill and could not do so. Jerry Tatum contacted Bill Erwin, who had driven a truck for Jerry before but had not done so since Jerry had leased his trucks to Polar, and asked Erwin if he would accompany Scott on the trip to New Jersey to deliver a load of cheese for Polar, and to do some of the driving. Jerry agreed to pay Erwin ten cents a mile for the trip, with part of Erwin's compensation to be retained by Jerry so that Jerry could be repaid for money Erwin owed him. Polar had no knowledge that Erwin was making the trip as a substitute driver. Erwin had not taken Polar's required written test, or driver's test, or submitted the health information required before he would be approved as a driver prior to the commencement of his employment.

The trip originated at Butterfield, Missouri, and its destination was Carteret, New Jersey. Scott Tatum drove the truck from Butterfield to St. Louis, and Erwin drove from St. Louis to Danville, Illinois. The men had breakfast there, and changed drivers again. Scott was driving after they left Danville, when an accident occurred. After a collision with an automobile, the truck left the road and turned over. Erwin suffered a fractured knee and other injuries as a result of the accident. After the accident, Jerry Tatum signed an affidavit that reads as follows:

I, JERRY GENTRY TATUM, of Butterfield, Missouri, hereby state that none of the employees of Polar Express, Inc. were notified that I permitted Mr. Bill Erwin to accompany my son, Jerry Scott Tatum, on a trip that loaded on April 6, 1983, at Monett, Missouri, and was destined for Carteret, New Jersey. I understand that this was an unauthorized passenger and was in direct conflict with the Independent Contractor's Equipment Lease Agreement that I signed on January 17, 1983.

DATED this *19* day of April, 1983.

/s/ Jerry G. Tatum
JERRY GENTRY TATUM

On January 10, 1985, Erwin filed a claim for worker's compensation, listing Polar and Jerry Scott Tatum as his employers. He later dismissed his claim against Tatum. On the claim form, in answer to the question as to how the injury occurred, what caused it, and what work Erwin was doing for his employer when the accident happened, Erwin stated, "Claimant was riding in a truck owned by Jerry Gentry Tatum, operated by Jerry Scott Tatum, leased to and operatef [sic] for Polar Express, Inc. The truck overturned after leaving the travel [sic] portion of the [h]ighway." In its answer, the insurer and Polar denied every allegation of the claim.

A hearing was held before Administrative Law Judge Richard Moss. After hearing evidence, Judge Moss denied Erwin's claim on the basis that the borrowed servant doctrine did not apply since Erwin had not proved that he had an expressed or implied contract of hire with Polar Express. Erwin filed an application for review by the commission. The commission, after reviewing the evidence and considering the record, affirmed the award of the administrative law judge. This appeal followed.

The parties to this appeal agree that the sole issue to be decided here is whether Erwin was an employee of Polar Express through application of the borrowed servant doctrine. The essential elements of that doctrine are (1) consent on the part of the employee to work for the special employer, (2) actual entry by the employee upon the work of and for the special master pursuant to an express or implied contract so to do, and (3) power of the special employer to control the details of the work to be performed and to determine how the work shall be done and whether it shall

stop or continue. *Ballard v. Leonard Brothers Transport Co., Inc.*, 506 S.W.2d 346, 350 (Mo.1974).

■ Since this claim was brought pursuant to the law set out in the Missouri Workers' Compensation Act, which is contained in Chapter 287 of the Missouri statutes, its disposition is governed by the provisions of that act, and judicial interpretations concerning it. The purpose of the Workers' Compensation Law is to provide a simple and nontechnical method of compensation for injuries sustained by employees through accidents arising out of and in the course of their employment. *Bethel v. Sunlight Janitor Service*, 551 S.W.2d 616, 618 (Mo. banc 1977). The word "employee" as used in Chapter 287 means every person in the service of any employer under any contract of hire, expressed or implied, or under any appointment or election, as well as dependents of deceased employees, minors, and other persons to whom compensation might be paid under the law. § 287.020.1 RSMo 1986.

■ There was nothing in evidence that even remotely suggests that Polar Express appointed or elected Erwin to be a substitute driver to Jerry Tatum. They had no knowledge that Erwin was riding in the truck, or had been driving it prior to the accident. Erwin admits that he did not have any expressed contract with Polar, and there is nothing in evidence to suggest he had any implied contract with them. Polar Express did not even know that Erwin existed. While the lease agreement between Tatum and Polar stated that Tatum was to provide drivers for the leased tractor trucks, it also provided that those drivers should be experienced, competent and qualified and approved by an officer of the carrier. Erwin had not been approved as a driver by Polar Express.

Since Polar had no knowledge that Erwin was driving the truck as a co-driver with Scott Tatum on April 5, 1983, it could not have entered into a contract with him, nor could it have controlled any details of his work. The award in question was supported by substantial evidence.

The commission's final award denying compensation is affirmed.

HOLSTEIN, C.J., and CROW, P.J., concur.