**Lindell McCORMACK, Employee–Respondent,**

v.

**STEWART ENTERPRISES, INC., Employer–Appellant,**

and

**St. Paul Fire and Marine Insurance Company, Insurer.**

**WD 50933.**

Missouri Court of Appeals, Western District.

Nov. 28, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 30, 1996.

Application to Transfer Denied March 26, 1996.

---

**3.** Respondent's request for damages for frivolous appeal is denied.

William F. Ringer, Kansas City, for appellant.

William H. McDonald, William H. McDonald & Associates, Raymond E. Whiteaker, John E. Price, Whiteaker & Wilson, P.C., Springfield, for respondent.

Before BRECKENRIDGE, P.J., and ULRICH and LAURA DENVIR STITH, JJ.

ULRICH, Judge.

Stewart Enterprises, Inc. (Stewart Enterprises) and St. Paul Fire and Marine Insurance Company (St. Paul), collectively "employer," appeal the Missouri Labor and Industrial Relations Commissions' award in favor of Lindell G. McCormack. The Commission's final award allowed compensation and affirmed the award of the Administrative Law Judge. The Administrative Law Judge found Lindell McCormack perma-

nently totally disabled (section 287.200, RSMo 1986) and entitled to receive workers' compensation benefits as prescribed by the Worker's Compensation Act; found employer responsible and "liable for past and future medical bills, including nursing expenses," and ordered employer to reimburse Lindell McCormack medical expenses accrued as of the date of the hearing in the amount of $359,443.68; found employer liable for past temporary total disability benefits; found total disability at $102.56 per week from and including August 30, 1991; found employer is "entitled to subrogate $579,198.56, its share of the third-party recovery to its liability for future disability"; and found that employer "is not entitled to subrogate its liability for past or future medical expenses." Employer contests the Commission's findings that 1) Lindell McCormack's injury was sustained in an accident arising out of and in the course of employment, and 2) the employer was not entitled to a credit or a right of subrogation to a third party recovery under Section 287.150 RSMo. The Commission's award is affirmed in part and reversed in part.

On August 29, 1991, Lindell McCormack, working with his father, Marion McCormack, a brother, and owner of Stewart Enterprises, Ray Stewart, began making asphalt repairs to Stewart Enterprises' premises. The day was hot and humid with temperatures in the 80's, and the humidity was 93%.

The workmen began the day by preparing the parking lot for incoming asphalt. The 225 degree asphalt arrived by the truckload. Marion McCormack and Ray Stewart operated a compactor and backhoe while Lindell McCormack and his brother worked on the ground with hand tools. The backhoe made smaller piles of the asphalt dumped by the truckload, and Lindell and his brother then placed the hot asphalt from the piles into potholes with shovels and rakes. The compactor was driven over the filled in potholes to compress the asphalt.

Ray Stewart left at noon, and the others stayed to complete the job. The work was fast paced, and Lindell McCormack did not take a lunch break. At approximately 2:00 p.m., Lindell stopped working on the ground and began to operate the compactor. After operating the compactor for less than an hour, Lindell fell from the moving compactor. Lindell testified that he was sitting on the seat of the compactor with one hand on the steering wheel while he turned to look over his shoulder to see if the area he had just compressed needed another pass with the compactor. He became dizzy or disoriented and turned to place both hands on the steering wheel. That was the last thing he remembered until he heard someone state, "here comes the ambulance."

Marion McCormack and other people at the scene moved Lindell to a shaded area and used wet towels and ice in an attempt to cool him. He was transported by ambulance to Community Hospital in Fulton and was then transferred to UMC—Columbia Medical Center. Lindell McCormack had experienced a spinal cord injury rendering him a permanent quadriplegic.

The parties stipulate that Lindell was working for Stewart Enterprises, the employer was operating under the provisions of the Missouri Workers' Compensation Law, and the employer was fully insured.

A hearing was conducted before an Administrative Law Judge (ALJ) on July 7, 1994. The Labor and Industrial Relations Commission affirmed and adopted the award on March 9, 1995. The award found that the injury arose from an accident occurring in the course of employment; the employer was responsible and liable for past and future medical bills, past temporary total disability benefits, nursing care, both past and future; and that the employer is entitled to subrogate $579,198.56, its share of the third party recovery to its liability, for future disability payments but not for past and future medical expenses.

## I. INJURY AROSE OUT OF THE COURSE AND SCOPE OF EMPLOYMENT

██ Employer's first point on appeal claims error in the administrative law judge's finding, adopted by the Commission, that the injury incurred by Lindell arose out of and in

the course of his employment with Stewart Enterprises. The Commission's decision will be upheld unless it is unsupported by competent and substantial evidence on the record as a whole or erroneously applies the law. *Sommer v. Sommer & Hartstein,* 888 S.W.2d 398, 399 (Mo.App.1994). In reviewing the record, the evidence is considered in the light most favorable to the Commission's award. *Pullum v. Hudson Foods, Inc.,* 871 S.W.2d 94, 96 (Mo.App.1994). This court will not substitute its judgment for the Commission's simply because this court would have made a different initial conclusion. *Hunsperger v. Poole Truck Lines, Inc.,* 886 S.W.2d 656, 658 (Mo.App.1994).

 The focus of appellant's argument is that Lindell McCormack suffered an idiopathic seizure that resulted in his injury and that heat related trauma did not precipitate his injury. Evidence was presented by the employer in the form of Dr. Daniel Phillips and Dr. Patrick Hogan's depositions. The physicians opined that Lindell McCormack experienced an idiopathic seizure resulting in unconsciousness and his fall. Their testimony, thus, refutes the theory that Lindell experienced a heat related disorder that rendered him unconscious. However, evidence also indicated that Lindell's unconsciousness was a result of heat distress. Dr. Colapinto, Lindell's treating physician, testified that his patient's injuries were precipitated by heat exhaustion causing him to fall and sustain injury. The commission's responsibilities include determining the credibility of witnesses, and it may disbelieve testimony of a witness even if uncontradicted. *Pullum,* 871 S.W.2d at 96. Thus, when conflicting medical theories are presented by competent evidence to the Commission, its determination that one theory is correct is binding on this court. *Sommer,* 888 S.W.2d at 399.

The cause of Lindell McCormack's unconsciousness is not critical to determining whether the incident that caused his injuries arose out of and in the course of his employment. The findings of the Commission, although determining that Lindell fainted due to the existing heat conditions while employed, more importantly concluded that the injury he sustained was due to his falling from the compactor.

 For the employer to be liable, injuries must occur by an accident arising out of and in the course of employment. § 287.120.1, RSMo (1993). An accident arises out of the course of employment when there is a causal connection between the condition under which the work is performed and the resulting injury.[1] *Cherry v. Powdered Coatings, Insurance Co. of North America,* 897 S.W.2d 664 (Mo.App.1995). The proper test of causal connection is whether the conditions of employment caused or contributed to cause the accident. *Clancy v. Armor Elevator Company,* 899 S.W.2d 123 (Mo.App.1995); *Alexander v. D.L. Sitton Motor Lines,* 851 S.W.2d 525, 528 (Mo. banc 1993).

The court in *Alexander* held that a causal connection was established if the conditions of the work place contributed to the accident even if the precipitating cause was idiopathic. *Id.* In *Alexander,* an employee fell from a platform approximately 4½ feet high after becoming dizzy. Although the dizzy spell was idiopathic the subsequent fall arose out of the employment and was compensable since the condition of employment, being on the platform, contributed to the injuries. *Id.* Similarly in *Clancy,* the employee was repairing an elevator when he experienced pain. He began to descend a flight of metal stairs when he slipped and injured his hip and leg. The injury was compensable because the use of the stairs was due to a condition of employment of the elevator repairman. *Clancy,* 899 S.W.2d 123.

 A situation similar to *Alexander* and *Clancy* exists in this case. Both *Alexander* and *Clancy* are instructive. The precipitating cause of Lindell McCormack's fall, whether an idiopathic seizure or heat exhaustion, is not determinative of the legal issue. The significance of Lindell's unconsciousness is that it caused him to fall from the compac-

---

1. An injury occurs "in the course of employment" when the employee is at a place where the person may reasonably be, while the person is fulfilling the duties of employment or engaged in something incidental thereto. *Pullum,* 871 S.W.2d at 97. This is not an issue here.

tor. Evidence was admitted by employer's two expert witnesses that the main factor resulting in employee's injury was his failure to employ protective mechanisms to avoid serious injury because he was unconscious. The evidence showed that the compactor roller was at least 4 feet from the ground. The injuries sustained by Lindell McCormack resulted from his fall from the compactor. Mr. McCormack was on the compactor as part of his employment. What precipitated his fall is immaterial. The fall from the compactor contributed to his spinal injury. Therefore, the accident arose out of the course of McCormack's employment and is compensable. Point I is denied.

## II. SUBROGATION CLAIM

Employer claims as its second point on appeal that the Commission erred in finding the employer was not entitled to receive a credit under its right of subrogation pursuant to section 287.150, RSMo.1990, for sums paid or payable under the Worker's Compensation Act against the net third party recovery effected by employee.[2]

The point is resolved by interpretation of section 287.150 of the Worker's Compensation Act. The relevant portion of Section 287.150 that existed when the accident occurred is as follows:

1. Where a third person is liable to the employee or to the dependents, for the injury or death, the employer shall be subrogated to the right of the employee or to the dependents against such third person, and the recovery by such employer shall not be limited to the amount payable as compensation to such employee or dependents, but such employer may recover any amount which such employee or his dependents would have been entitled to recover. Any recovery by the employer against such third person, in excess of the compensation paid by the employer, after deducting the expenses of making such recovery shall be paid forthwith to the employee or to the dependents, and shall be treated as an advance payment by the employer, on

account of any future installments of compensation.

\* \* \* \* \* \*

3. Whenever recovery against the third person is effected by the employee or his dependents, the employer shall pay from his share of the recovery a proportionate share of the expenses of the recovery, including a reasonable attorney fee. After the expenses and attorney fee have been paid the balance of the recovery shall be apportioned between the employer and the employee or his dependents in the same ratio that the amount due the employer bears to the total amount recovered, or the balance of the recovery may be divided between the employer and the employee or his dependents as they may agree. Any part of the recovery found to be due to the employer, the employee or his dependents shall be paid forthwith and any part of the recovery paid to the employee or his dependents under this section shall be treated by them as an advance payment by the employer on account of any future installments of compensation.

The purpose of this section is to protect and benefit the employer liable for compensation, and it is designed to afford indemnity for compensation payable by it. *Daniels v. Kroeger,* 294 S.W.2d 562, 566 (Mo. App.1956). The statute insures that there is not a double recovery by the employee, which has been called an "evil to be avoided". *Schumacher v. Leslie,* 360 Mo. 1238, 232 S.W.2d 913, 919 (banc 1950). The employee or employer who recovers the funds holds so much of the recovery that belongs to the other in trust. *Id.* Employer argues that this section allows it full credit toward past compensation payments owed but unpaid.

The Supreme Court in *Ruediger v. Kallmeyer Brothers Service,* 501 S.W.2d 56 (Mo. banc 1973), provided the method by which section 287.150.3 is to be applied. *Ruediger* provided the following method of calculation: "(1) the expenses of the third party litigation should be deducted from the third party

2. The actual conclusions of the Administrative Law Judge, adopted by the Commission, found that the employer was entitled to subrogate the third party recovery for future disability payments but not for past liability payments due or for past and future medical expenses.

recovery; (2) the balance should be apportioned in the same ratio that the *amount paid* by the employer at the time of the third party recovery bears to the total amount recovered from the third party; (3) the amount due each should be paid forthwith; (4) the amount paid the employee should be treated as an advance payment on account of any future installments of compensation; and (5) ... the employee should be entitled to future compensation benefits in the event the amount paid him as an advance is exhausted under the provisions of the statute." (emphasis added)

▇▇▇ Payment of compensation due an employee is not a condition precedent to the employer's exercise of its subrogation rights. *State ex rel. Missouri P.R. Co. v. Haid,* 332 Mo. 616, 59 S.W.2d 690, 692 (banc 1933). However, when no payments have been made at the time of the third party recovery, the manner in which the subrogation right is exercised is affected. The court in determining whether the employer could bring action against the third party prior to paying benefits to the employee held that the employer may recover any amount the employee would be able to recover and the excess above the compensation paid by the employer shall be delivered to the employee and treated as an advance payment on future installments of compensation. *Id. Ruediger* provides that the employer is allowed a recovery in accordance with the amount paid to the employee. The language chosen is "amount paid," not "payable." In the present situation the employer/insurer has made no payments to Lindell McCormack to date. Therefore, since no payments have been paid by the employer to employee, the sums received by the employee are considered an advance on future compensation payments. This application of the *Ruediger* formula is consistent with the holding in *Haid.* This application does not deny the employer its right of subrogation but defines which payments are allowed to be credited.

Employer argues that several cases hold this application of the *Ruediger* formula is contrary to Missouri case law. Employer cites the case of *Eagle v. City of St. James,* 669 S.W.2d 36 (Mo.App.1984), as support for its position. *Eagle,* like the other cases cited by employer, is distinguishable from the present situation. In *Eagle,* the court deducted the third party recovery from the total compensation liability the employer owed, including past installments not yet paid. The critical difference in *Eagle* is that the total amount of liability was known. The two other cases relied on by employer, *Everard v. Woman's Home Companion Reading Club,* 234 Mo.App. 760, 122 S.W.2d 51 (1938) and *Zasslow v. Service Blue Print Co.,* 288 S.W.2d 377 (Mo.App.1956), also involved compensation amounts that were fixed. Lindell McCormack is totally and permanently disabled. He will receive payments indefinitely. A net amount due from the employer cannot be calculated.

▇▇▇ *Ruediger* briefly referred to this distinction when clarifying the method in which the statute was to be applied. *Ruediger,* 501 S.W.2d at 59. Prior to the *Ruediger* formula, many cases had used the amount of the award, not the amount actually paid, in determining how distribution of the recovery was to be achieved. *Id.* at 58. That approach did not provide a way to treat an employee who had been totally and permanently disabled and for whom the amount of compensation was not a sum certain. *Id.* at 59. In cases involving total and permanent disability, the proper treatment is to allow recovery for the amounts already paid by the employer under the *Ruediger* formula and then to treat the remaining amount paid to the employee as an advance of future compensation benefits. When the advance is exhausted, the employer must once again begin paying compensation benefits.

▇▇▇ The provisions of a legislative act are construed together and read in harmony whenever reasonably possible. *Blaine v. J.E. Jones Const. Co.,* 841 S.W.2d 703, 711 (Mo.App.1992). Thus, a section of an act should not be considered in isolation but as part of the entire act. The primary rule of statutory construction is to ascertain the intent of the General Assembly. *Sheldon v. Board of Trustees of the Police Retirement System,* 779 S.W.2d 553, 554 (Mo. banc. 1989). The primary purpose behind the Worker's Compensation Act was to mitigate

losses sustained from accidental injuries received in the workplace. *State ex rel. Lakeman v. Siedlik*, 872 S.W.2d 503, 505 (Mo.App. 1994). The system was enacted to provide quick recovery to those who were injured without their incurring the cost and delay associated with litigation. The act served to place upon industry losses experienced by employees arising out of injuries sustained in the course of employment. *Rooks v. Trans World Airlines*, 887 S.W.2d 671, 673 (Mo. App.1994); *McFarland v. Bollinger*, 792 S.W.2d 903, 907 (Mo.App.1990).

Exercising the employers' subrogation rights as employer proposes would allow employers to withhold payment until the employee makes a third party recovery, leaving the incapacitated employee without means of support while causing the employee to bear the burden of pursuing redress. This result is contrary to the goals of the Worker's Compensation Act of providing employees quick compensation for injuries arising out of and in the course of employment.

■ This conclusion is also consistent with employer's characterization of its right as being one of indemnity and not true subrogation. A cause of action accrues when the indemnitee sustains actual loss. *Burns & McDonnell Engineering v. Torson Construction Co.*, 834 S.W.2d 755, 758 (Mo.App.1992). This contemplates actual payment by the indemnitee for the obligation. *Id.*

■ Although, employer should not be allowed the benefit of a credit for payments not yet made, the Commission erred in excluding medical expenses from being treated as part of the advance of future compensation payments under the employer's right of subrogation. Lindell McCormack focuses on the term "installment" within section 287.150.3 as support for the Commission's finding that employer was not entitled to subrogate its liability for future medical expenses. The relevant phrase of the statute is "advance payment by the employer on account of any *future installments of compensation.*" (emphasis added) The dispute arises because medical expenses are not payable in installments. *Yardley v. Montgomery*, 580 S.W.2d 263, 270 (Mo. banc 1979).

■ An employer's furnishing medical treatment to an injured employee constitutes a payment on account of injury. *Bryant v. Montgomery Ward & Co.*, 416 S.W.2d 195, 197 (Mo.App.1967). The right to such medical treatment is a part of the employee's compensation awarded under the language of section 287.140, "in addition to all other compensation." *Id.* at 199. Since the compensation act requires an employer and its insurer to furnish medical aid, the expenditures relating thereto constitute payments of compensation. *Sommers v. Hartford Accident & Indemnity Co.*, 277 S.W.2d 645, 649 (Mo.App. 1955).

■ When calculating the amount of recovery under section 287.150.3, medical expenses are included. In *Sommers* the court held that appellant was entitled to be repaid out of the money recovered to the extent of the compensation payments, including medical, made by it to plaintiff. *Sommers*, 277 S.W.2d at 650. Construction of a statute that avoids an unreasonable result is favored. *Sheldon v. Board of Trustees of the Police Retirement System*, 779 S.W.2d 553, 554 (Mo. banc 1989). Since medical expenses are subject to the subrogation right if paid prior to a third party recovery, to deny the same right for future payments would be an unreasonable construction of the statute. An unreasonable construction will not be created by disregarding prior interpretation and the intent of the statute to emphasize the term "installment" within section 287.150.3 as Lindell McCormack proposes. Therefore, medical expenses are included as future payments of compensation, and employer is allowed subrogation against such payments.

The Commission's finding that Lindell McCormack's injuries arose out of and in the course of his employment by Stewart Enterprises, Inc., is specifically affirmed. The portion of the Commission's award finding that employer was not entitled to receive credit under its right of subrogation pursuant to section 287.150, RSMo 1990 against the net third party recovery effected by employee for advance compensation payments, including future medical expenses, is reversed, and the Commission's award is remanded for modification consistent with this

opinion. The Commission's award is affirmed in all other respects.

All concur.