Dorothy Ruth MARTIN, Respondent,

v.

CITY OF INDEPENDENCE,
Missouri, Appellant.

No. WD 32435.

Missouri Court of Appeals,
Western District.

Dec. 8, 1981.

George E. Kapke, Independence, for appellant.

C. Carl Kimbrell, Kansas City, for respondent.

Before TURNAGE, P. J., and PRITCHARD and KENNEDY, JJ.

KENNEDY, Judge.

This is a worker's compensation proceeding filed by Dorothy Martin, widow and dependent of the deceased, William Martin, against decedent's employer, City of Independence, Missouri. The administrative law judge found that the employee had an accident arising out of the course of his employment, but that the employee's injury and death were not causally related to the accident. On review, the Labor and Industrial Relations Commission reversed the law judge and entered an award for compensation to the claimant. On appeal, the circuit court affirmed the Commission's award. The employer appealed to this court.

We affirm the judgment of the circuit court.

William Martin worked in the Power and Light Department. On January 27, 1976, Martin and a fellow employee, Gary Jubratic, were unloading transformers from a trailer. Each transformer weighed between 270 and 400 pounds. Jubratic pushed the transformer out of the trailer as Martin pulled. Martin was standing on a dock plate. The weather was cold and the dock plate was wet, snowy and icy. Jubratic testified that Martin had trouble maintaining his footing and that he slipped on the ice. Soon afterward, Jubratic noticed that Martin was holding his back and he was complaining that his abdomen and back

hurt. At noon, Martin filled out an accident report form. He also called his wife and told her that he had hurt himself and was coming home early. After running a few errands for the Power and Light Department, Martin went home about 1:30.

Mrs. Martin testified that Mr. Martin went immediately to bed. The next morning he vomited and complained of abdominal pain. In the late morning Martin became semi-comatose. Mrs. Martin called an ambulance. Martin was pronounced dead on arrival at the hospital. An expert witness, Dr. Beauchamp, testified that the pain and upset stomach were "all compatible" with a rupture in the aortic artery.

The autopsy report revealed that Martin had a previously undiscovered severe arteriosclerotic aorta. The report concluded that "death resulted from a ruptured arteriosclerotic abdominal aortic aneurysm..."

At the hearing before the administrative law judge, Gary Jubratic, Mrs. Martin and Catherine Howard, a neighbor, all testified that prior to the accident Martin had appeared in good health and had no symptoms of injury.

Dr. Beauchamp, a cardiologist, testified, through deposition, that "aneurysms usually develop over a period of years and they may rupture at any time." Dr. Beauchamp stated that he believed the stress Martin suffered when unloading the transformers "conceivably contributed to his death from ruptured abdominal aorta". On cross-examination Dr. Beauchamp was asked, "Then it is only the fact that he was exerting force that caused it to rupture, not that it caused its existence?" Dr. Beauchamp replied, "That's true".

On appeal, the employer alleges that the trial court erred in affirming the Commission's award because there was not sufficient competent evidence to find that a causal connection existed between decedent's death and a work-related injury.

The court cannot substitute its judgment for that of the Commission. If sufficient competent evidence exists from which the Commission can make its determination, this court must affirm the award. Sec. 287.490, RSMo 1969; *Smith v. Terminal Transfer Co.*, 372 S.W.2d 659 (Mo.App. 1963); *Davis v. Day-Brite Lighting, Inc.*, 366 S.W.2d 84 (Mo.App.1963). In reviewing the whole record, this court will only look to facts and inferences favorable to the award. *Wray v. Schwitzer Co.*, 615 S.W.2d 646 (Mo. App.1981).

In order for claimant to meet her burden of proof, she must show that it was reasonably probable that the accident caused the injury which resulted in Martin's death. *Davis v. Brezner*, 380 S.W.2d 523, 527[2] (Mo.App.1964). The employer alleges that this standard was not met, but rather Dr. Beauchamp's testimony showed only that the accident was possibly related to the injury. However, some hesitancy in an expert's testimony is common. As Professor Larson notes in his treatise on Workmen's Compensation Law:

> The distinction between probability and possibility should not follow too slavishly the witnesses' choice of words, as sometimes happens in respect to medical testimony. A doctor's use of such words as "might", "could", "likely", "possible" and "may have", coupled with other credible evidence of a non-medical character, such as a sequence of symptoms or events corroborating the opinion, is sufficient to sustain an award. It is a common experience of compensation and personal injury lawyers to find that the more distinguished a medical witness is, the more tentative and qualified are his statements on the witness stand. He will testify that the sledge-hammer blow on claimant's head might have caused claimant's headache, but hesitates to say positively that this was the only possible cause, and may concede on cross-examination that there could conceivably be other causes. The weight of such testimony, however, should not be too sharply discounted because of the disposition of the highly-trained scientific mind to refrain from unqualified statements or opinions on such matters as causation.

Larson, 3 *Workmen's Compensation Law*, § 80.32, "Interpreting Cautious Medical Testimony", quoted in *Smith v. Terminal Transfer Co.*, supra at 667.

■ For claimant to recover, it is not necessary that the accident caused the existence of the aneurysm. It is sufficient if the accident accelerated the rupture of a preexisting aneurysm. *Cowick v. Gibbs Beauty Supplies*, 430 S.W.2d 626, 630 (Mo. App.1968). A causal connection between the accident and the injury that led to Martin's death must still be shown.

■ Dr. Beauchamp testified about the medical probability of a connection between the accident and the ruptured aneurysm. Further, the testimony of the lay witnesses also helped show a causal connection. Martin was not suffering from any injury prior to the accident, he suffered an unusual strain and immediately thereafter he complained of severe abdominal pain. Since these matters were within the understanding of lay witnesses, their testimony was relevant competent evidence that helped prove the existence of the causal connection. *Fogelsong v. Banquet Foods Corp.*, 526 S.W.2d 886 (Mo.App.1975).

When the cautious expert testimony is combined with the testimony of the lay witnesses, sufficient competent evidence exists from which the Commission could find that Martin's accident led to the injury that resulted in his death. Accordingly, the judgment of the circuit court is affirmed.

All concur.