Guila Kern JOHNSON (Substituted for George A. Johnson, Jr., Employee-Deceased), Claimant-Appellant,

v.

CITY OF DUENWEG FIRE DEPARTMENT, Employer, and Continental Insurance Company, Insurer, Defendants-Respondents.

No. 68906.

Supreme Court of Missouri, En Banc.

July 14, 1987.

Rehearing Denied Sept. 15, 1987.

Raymond E. Whiteaker, Thomas Y. Auner, Springfield, for claimant-appellant.

Lloyd R. Buehner, Joplin, for defendants-respondents.

HIGGINS, Judge.

Claimant appeals a judgment which reversed an award of statutory minimum compensation by the Labor and Industrial Relations Commission on a finding of no competent substantial evidence of causation. The trial court also found that although no compensation is due in absence of causation, it would affirm the minimum rate determined by the Commission. The Court of Appeals, Southern District, affirmed the judgment in a divided decision. This Court affirms the judgment in part and reverses it in part to remand the case to the Labor and Industrial Relations Commission for reentry of its award.

Claimant, George A. Johnson, Jr., a self-employed mechanic in Duenweg, Missouri, was an unpaid member of the Volunteer Fire Department of the City of Duenweg. On July 30, 1980, the claimant responded to several fire alarms. The first alarm called the firemen to a prairie fire around 11:00 a.m. The call lasted until approximately 2:30 p.m. At 2:30 p.m. a second alarm sounded. Claimant was at the second fire from about 3:30 p.m. until 11:30 p.m. At approximately 8:00 p.m., at the site of the second alarm, claimant experienced intense pain in his chest which radiated to his arms and lasted for about one-and-one-half hours. During this time he stopped driving the fire truck and sat and rested until the pain subsided. When the pain in his arms and chest subsided, claimant resumed his duty of driving the fire truck until about 11:00 p.m. when the fire was brought under control. The volunteers returned to Duenweg for an evening meal. Johnson went home because he did not feel well enough to eat with the others.

The next day, claimant's wife called a doctor to make an appointment for him.

She was told that the earliest possible appointment date was August 26, 1980. Mrs. Johnson requested a physical for her husband because she did not know the source of his pains. Until August 8, 1980, claimant attempted to continue his work as a mechanic and to answer fire alarms although he was very tired and occasionally experienced pain in his chest and left arm.

On August 8, after answering a grass fire alarm, plaintiff returned home at about 3:00 p.m. and closed his shop because he felt too tired to work. At approximately 7:30 p.m., he experienced extreme pain in his chest and arms. Don Johnson, claimant's neighbor and the Duenweg Fire Chief, advised claimant to go to the emergency room. Claimant went to the hospital and was diagnosed by Dr. Dennis Smith as having had a heart attack. Tests taken at that time revealed that claimant had sustained permanent damage to his heart as a result of decreased blood flow to the heart muscle. Mr. Johnson has since died and his widow, Guila Kern Johnson, has been substituted as the claimant in this case.

On December 10, 1980, claimant filed his Report of Injury with the Division of Workers' Compensation. After a hearing on the matter, the administrative law judge found in favor of the employer and insurer against the claimant and denied compensation stating that the claimant had not proved a causal connection between the accident of July 30, 1980, and the heart attack. The Labor and Industrial Relations Commission reversed the administrative law judge and entered an award of compensation. The Commission held that there was a medical causal connection between this accident and the claimant's injury, and found the statutory minimum rate of compensation, $16.00 per week, to be the applicable wage rate pursuant to section 287.170 and section 287.190, RSMo 1978.

Thus the issues are whether there was sufficient evidence for the Labor and Industrial Relations Commission to find a causal connection between the occurrence on July 30, 1980, and the claimant's injuries and permanent disability; and if so, whether the Commission applied the proper rate of compensation.

## I.

Upon review, an award of the Labor and Industrial Relations Commission may be overturned only if it is not supported by substantial evidence or when it is clearly contrary to the overwhelming weight of the evidence. *Vogel v. Hall Implement Co.*, 551 S.W.2d 922 (Mo.App. 1977). Thus, it is the duty of the reviewing court to determine from the record as a whole whether the Commission could reasonably have made its findings and award reviewing the record in the light most favorable to the findings of the Commission. *Brown v. Missouri Lumber Transports, Inc.*, 456 S.W.2d 306 (Mo.1970); *Merriman v. Ben Gutman Truck Service, Inc.*, 392 S.W.2d 292 (Mo.1965).

There was sufficient evidence to support the finding of causation by the Commission. At the administrative hearing, claimant's physician, Dr. Smith, was asked his opinion of the cause of the pain the claimant experienced while fire fighting on July 30. Dr. Smith testified that he could not "exclude that he did not have a myocardial infarction at that time." He further testified that "[i]t probably would not have occurred at that time if he had not been under such stress." The doctor acknowledged that because he did not run any laboratory tests or cardiographs at that time he could not state with "reasonable medical certainty" that the claimant had a heart attack on July 30. The claimant emphasizes the intense heat under which the fire fighting operations were performed on July 30, 1980. It was also noted that because of particularly hot and dry conditions additional units from nearby towns were required in order to bring the fire under control. The employer and insurer maintain that the doctor could not be absolutely certain that claimant suffered a heart attack while fighting the fire and, therefore, the claimant did not successfully establish a causal relationship.

In *Martin v. City of Independence*, 625 S.W.2d 940 (Mo.App.1981), the court noted

that some hesitancy in an expert's testimony is common. In *Martin*, the claimant's widow filed a workers' compensation proceeding against the employer claiming that her husband's fall on an icy dock accelerated the rupture of a pre-existing arteriosclerotic abdominal aortic aneurysm causing his death. At the hearing before the administrative law judge, the widow and other witnesses testified that prior to the accident the claimant, William Martin, had appeared in good health and had no symptoms of injury. The accident occurred when Martin and a co-worker were unloading transformers from a trailer. Martin lost his footing on the icy dock and fell. Soon after, Martin complained that his abdomen and back hurt. At noon, Martin filed an accident report, ran a few errands for his employer, the Power and Light Department, and then went home to bed. The next morning, Martin continued to complain of abdominal pain and by late morning became semi-comatose. Martin died on the way to the hospital. Although the Labor and Industrial Relations Commission found in favor of the claimant, the employer alleged on appeal that the award should not be affirmed because there was insufficient evidence to find a causal connection between the claimant's death and a work-related injury. *Id.* at 941.

A cardiologist testified that "aneurysms usually develop over a period of years, and they may rupture at any time." The doctor stated that the stress Martin suffered during the accident "conceivably contributed to his death from ruptured abdominal aorta." *Id.* Despite the hesitancy in the expert's opinion, the court affirmed the decision of the Commission. The court quoted at length from Professor Larson's treatise on workers' compensation law:

> The distinction between probability and possibility should not follow too slavishly the witnesses' choice of words as sometimes happens in respect to medical testimony. A doctor's use of words, such as "might", "could," likely", "possible" and "may have", coupled with other credible evidence of a non-medical character, such as a sequence of symptoms or events

corroborating the opinion, is sufficient to sustain an award.

625 S.W.2d at 941, citing Larson, 3 Workmen's Compensation Law § 80.32. The treatise adds that cautious expert testimony combined with the testimony of lay witnesses can provide sufficient competent evidence in support of causation. *Id.* The testimony in compensation proceedings should be appraised and weighed in its entirety.

Similarly, in this case the Commission reasonably concluded from the evidence that the claimant's pre-existing heart condition was activated by the unusual exertion on the job. Before the incident on July 30, the claimant had not complained of pain in his chest or arms. The pain lasted from one to one-and-one-half hours, the average time normally associated with a heart attack. The claimant continued to complain of tiredness and additional pain until the subsequent heart attack on August 8. In a letter to claimant's attorney, Dr. Smith stated that "it was the stress that precipitated his clinical symptomatology."

The employer and insurer argue that *Martin* is distinguishable. They point to the short time between Martin's accident and his death and emphasize that after the accident he was unable to work. True, the nature of the claimant's injury differed from Martin's; however, in some cases victims of heart attacks are not immediately incapacitated. The employer and insurer also argue that claimant's case is of the type that requires exclusive use of medical testimony to find causation and is of such a sophisticated nature that it cannot be aided by lay testimony. In *Martin*, lay witnesses testified that he was not suffering from the injury prior to the accident. *Martin*, 625 S.W.2d at 941. He suffered an unusual strain and immediately thereafter complained of severe abdominal pain. Here there was similar testimony that the claimant had felt well and had no problems with chest pains until the evening of the fire. The Duenweg area suffered an unusually hot and dry summer in 1980 which increased the threat of fires and the amount of work required from the vol-

unteer firemen. Testimony revealed the temperature that evening was 110 degrees and near the fire was even higher. The claimant experienced such intense pain that evening that witnesses stated he had to stop and rest for about an hour and one-half and after the fire was controlled he went straight home. Neither claimant nor Martin was aware of his pre-existing condition, and each became aware of his illness only after the symptoms incapacitated them. Lay testimony can properly aid in establishing the causal connection in this case just as in *Martin.*

## II.

The claimant asserts that the award granted by the Commission of the statutory minimum compensation at $16.00 per week is not appropriate. Initially, after a hearing, the administrative law judge observed that he would have been unable to determine a rate of compensation from the evidence presented. After reversing the administrative law judge and finding in favor of the claimant, the Commission remanded the case to the administrative law judge to take further evidence on that issue. Upon rehearing, the administrative law judge found that the claimant should be compensated on the basis of the pay scale of Duran Studivant, the only paid employee of the Duenweg Fire Department. Studivant was paid $800.00 per month. On this basis the rate was determined at $123.07 per week for temporary total benefits and $90.00 per week for permanent partial disability. The Commission again reversed the administrative law judge and entered a judgment for the minimum compensation rate of $16.00 per week.

The claimant argues that the $16.00 per week award violated section 287.250, RSMo 1978, and is contrary to the purpose of workers' compensation law to compensate for the loss of earning power in the future caused by the injury. Section 287.250 sets out the rates of compensation established by the legislature. Subsection 6 is the wage provision which applies to this case:

(6) In the case of injured employees who earn either no wage or less than the earnings of adult day laborers in the line of employment in that locality, the yearly wage shall be reckoned according to the average annual earnings of adults of the same class in the same (or if that is impracticable then of neighboring) employments;

This section was interpreted in *Eagle v. City of St. James,* 669 S.W.2d 36 (Mo.App. 1984), to mean that an auxiliary police officer injured in the line of duty must be compensated based on the salary of a regularly employed police officer paid by the city. *Id.* at 41. Citing section 287.800, RSMo 1978, the court noted that the legislature has admonished that workers' compensation law should be "liberally construed with a view to the public welfare."

Respondents assert here that the claimant failed to introduce evidence that would entitle him to a rate of compensation in excess of the minimum rate of compensation. The party who claims benefits under workers' compensation law has the burden of proving all of the material elements of his claim. *Meilves v. Morris,* 422 S.W.2d 335 (Mo.1968); *Merriman v. Ben Gutman Truck Service,* 392 S.W.2d 292 (Mo.1965).

■ The Commission properly overruled the administrative law judge on the rate of compensation. Although claimant presented evidence that Duran Studivant was a paid employee of the City of Duenweg, cross-examination revealed that Studivant did not fit the requirements of section 287.-250(6) in that he was not in the same employment as the claimant. According to the transcript of the hearing on the rate of compensation, Studivant is required to respond to fire alarms but his duties also include city maintenance, reading water meters and cleaning the city streets and drainage ditches. Consequently, it cannot be said that the claimant and Studivant have equal duties or responsibilities of employment.

■ The Chief of the Butler Fire Department in nearby Butler, Missouri, testified that he was paid about $1200.00 per month to oversee sixteen volunteer firemen

and to work as a city policeman. This witness could not help the Commission to determine an appropriate rate of compensation because his salary included compensation for his duties as a Butler patrolman. Butler's volunteers were paid a nominal amount for each incident to which they responded. The Chief of the Seneca, Missouri, Fire Department stated that he and the entire fire department in that town served without pay. The District Chief for the City of Joplin Fire Department, who is also the Captain of the Duenweg Department, testified that the earnings of a regularly employed fire fighter with three years experience is about $1,300.00 per month. He stated further that the claimant's fire fighting abilities compared favorably with those of a typical fire fighter on the Joplin Fire Department. The witness added, however, that he was not certain of the amount.

In *Stegeman v. St. Francis Xavier Parish,* 611 S.W.2d 204 (Mo. banc 1981), the Court applied section 287.250(6) to a volunteer aiding in the construction of a church building for his parish who was found to be an employee. The case was remanded for further evidence of the annual earnings of adults in the same employment. The minimal rates paid to the other laborers were held to be "in no way indicative of rates being paid to adults engaged in the same kind of employment." *Id.* at 209. Similarly, in this case the minimal rates paid to other Duenweg volunteers are not indicative of rates paid to adults engaged in the employment of fire fighting.

■ The claimant has had the opportunity to present evidence on the issue of the rate of compensation on two separate occasions. Neither occasion produced sufficient evidence to require a rate higher than the statutory minimum. Therefore, the statutory minimum rate of $16.00 per week was the appropriate award to the claimant.

Accordingly, the judgment of the trial court on the minimum rate of compensation is affirmed; the judgment against causation is reversed; and the case is for remand to the Labor and Industrial Relations Commission for reentry of its award of statutory minimum rate of compensation.

BILLINGS, C.J., and DONNELLY and WELLIVER, JJ., concur.

ROBERTSON, J., concurs in result.

BLACKMAR, J., concurs in part and dissents in part in separate opinion filed.

RENDLEN, J., concurs in part and dissents in part and concurs in separate concurring in part and dissenting in part opinion of BLACKMAR, J.

BLACKMAR, Judge, concurring in part and dissenting in part.

I agree that the element of causation was sufficiently demonstrated by the evidence, and so I concur in Part I of the opinion. I dissent from the holding in Part II of the opinion because the Commission departs from the plain meaning of § 287.-250(6), RSMo 1986, reading as follows:

In the case of injured employees who earn either no wage or less than the earnings of adult day laborers in the line of employment in that locality, the yearly wage shall be reckoned according to the average annual earnings of adults of the same class in the same (or if that is impracticable then of neighboring) employment.

The legislature made it clear in this section that an employee who is a volunteer, in the sense that he receives no compensation or nominal compensation, is to receive worker's compensation benefits not at the statutory minimum rate, or on the basis of the nominal compensation he actually receives, but at a rate determined by the "average annual earnings of adults of the same class."

The Commission's misunderstanding of the law shows on the face of its final award in the following two paragraphs:

The employer and insurer offered evidence upon which the Commission can and does rely. Ronald F. Montgomery, Chief of the Seneca Fire Department, which has about fifteen volunteers, testi-

fied on behalf of the employer and insurer. According to this testimony volunteers are paid $3.00 per call for a fire in the city; $5.00 per call for a fire outside of the city; $2.00 for every meeting; and $1.00 for a bunk-out. The employer and insurer offered evidence of the annual earnings of all of the Seneca Fire Department volunteers for 1983. All of these earnings are set forth in the Employer's Exhibit No. 2.

It is clear that the highest annual earnings of a single volunteer amounted to only $273.00, which if used would entitle the claimant in this case to only the minimum rate of compensation, in effect at the time of the accident, or $16.00 per week. Averaging the annual earnings of all volunteers for the City of Seneca gives the claimant no higher rate.

This holding runs counter to *Stegeman v. St. Francis Xavier Parish,* 611 S.W.2d 204 (Mo. banc 1981), holding that a volunteer church laborer was to receive compensation at the same level as compensated laborers of the vicinity, and to *Eagle v. City of St. James,* 669 S.W.2d 36 (Mo.App. 1984), holding that auxiliary policemen were to be compensated on the basis of the earnings of regular policemen of the city. The Commission certainly commits grievous legal error in its apparent assumption that the compensation actually paid to volunteers is a material circumstance.

The principal opinion seeks to excuse this departure from the governing law by suggesting that there was some sort of failure of proof on the part of the claimant. The claimant's able and experienced counsel started by establishing the compensation paid to the only employee of the City of Duenweg whose duties required him to fight fires. The Commission rejected this because he was required to perform other duties and received no additional compensation for his fire fighting. I find this arbitrary because the other duties of city maintenance, reading water meters, and cleaning the streets and drainage ditches are not of any higher order than fire fighting. Counsel acted appropriately in bringing the compensation of the only city employee whose duties required him to fight fires to the attention of the fact finding authority.

Counsel did not rest here. He provided ample information about compensation received by ordinary fire fighters in the nearby city of Joplin. The Commission's finding and the principal opinion refer to testimony about a figure of $1,300 a month for Joplin firemen. The principal opinion asserts that the witness was "not certain" of this amount. The Commission did not say that it rejected this figure because of uncertainty. It did not say why it rejected the figure. It also overlooked the same witness's testimony at the prior hearing that Joplin firemen received $1,170 per month in 1982 and 8% less, computed at $1,076, in July of 1980, when the compensable injury occurred. There seems to be no real dispute about these figures.

The Commission could at least fall back on the federal minimum wage of $3.35 an hour or $581 per month, which it and we judicially know. To award compensation on this basis would better serve the purpose of the statute than does the approach the Commission and the Court take.

What it comes down to is that there was evidence in the record from which the Commission could have determined an award in conformity with the mandate of the statute, and the Commission erroneously determined that the appropriate standard was that relating to the payment of volunteers. This is not a simple finding of failure of proof. Neither the Commission nor the Court has a realistic suggestion as to what other kind of proof could be made.

I would endorse the following statement from the dissenting opinion of Commissioner Herbert L. Ford:

Although there is no case directly on point, I find the cases construing Section 287.250(6) do not preclude the use of the average annual earnings of paid, full-time workers in the same or neighboring employments. See *Stegeman v. St. Francis Xavier Parish,* 611 S.W.2d 204, 209–210 (Mo. banc 1981). Nothing in that opinion suggests that the uncompensated, volunteer laborer for the parish was not to be compensated on the basis

of the earnings of paid, regular workers on the construction crew. In *Eagle v. City of St. James*, 669 S.W.2d 36, 41 [11] (Mo.App.1984) the Court of Appeals affirmed the rate of compensation for an unpaid, auxiliary police officer, which was based upon the findings of the Commission that police officers regularly employed by the city were paid $500.00 per month, or $6,000.00 per year. The Court cited *Stegeman, supra,* as authority in upholding this application of Section 287.-250(6). The Commission in *Eagle, supra,* did not compare the claimant to auxiliary police officers in other places who may have been compensated per call or meeting. Nor was Eagle's compensation rate based only upon the "theoretical" payment of $1.00 per month to each officer on the auxiliary force, amounts which actually were placed in a fund to purchase uniforms, 669 S.W.2d at 40. Eagle was compensated for his injury as though he were a salaried police officer. The claimant in this case should be treated this way by affirming the award of the administrative law judge.

By this Court's opinion the claimant is apparently told that substantial compensation is authorized but that no means of proof is available. The scene reminds one of Alice in Wonderland. Compensation paid by the City of Duenweg is rejected because the employee was not a full-time fire fighter and compensation paid full-time fire fighters in neighboring cities was rejected because they worked in a larger city. I do not believe that this is what the legislature had in mind.

Unless the Court intends to overrule *Stegeman,* its stubborn refusal to remand the case to the Commission is difficult to understand. The Commission considered the compensation of virtual volunteers whose compensation was nominal. *Stegeman* says that it should not give these cases any weight, but should consider only the rate of pay of the most comparable wholly paid employees. Only the Commission can tell us what it would do if properly instructed on the law. The principal opinion joins the Commission in ignoring the dictate that the worker's compensation law

be "liberally construed with a view to the public welfare." The decision can only confuse lawyers, judges, administrators and volunteer firemen.