Mary CAUSEY, Claimant–Appellant,

v.

Ray McCORD, d/b/a McCord's Cream Castle, Employer–Respondent.

No. 15690.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 3, 1988.

Robert A. Dempster, Dempster, Barkett & McClellan, Sikeston, for claimant-appellant.

Kenneth C. McManaman, O'Loughlin, O'Loughlin & McManaman, Cape Girardeau, for employer-respondent.

HOLSTEIN, Chief Judge.

This is a workers' compensation case. Mary Causey (claimant) seeks compensation for an occupational disease allegedly contracted at her place of work, McCord's Cream Castle. Following a hearing, the administrative law judge denied compensation. With one member dissenting, the Labor & Industrial Relations Commission (commission) affirmed the award of the administrative law judge and adopted his opinion.

There are two questions presented on appeal. The first is whether the commission erred in denying relief because the "only medical testimony clearly showed that this was a compensable injury." The second question is whether the commission properly construed the workers' compensation law.

This court's scope of review is limited to ruling on questions of law and to determining whether there was sufficient, competent evidence in the record to support the commission's ruling. § 287.495.1.[1] The court will only disturb the commission's award when it is against the overwhelming weight of the evidence. *Johnson v. City of Duenweg Fire Dept.*, 735 S.W.2d 364, 366 (Mo. banc 1987). Finally, a court is not the judge of the credibility of the witnesses and does not substitute its judgment for the facts found by the commission if they are supported by sufficient, competent evi-

---

1. Unless otherwise indicated, all references to    statutes are to RSMo, 1986.

dence. *Barr v. Vickers, Inc.*, 648 S.W.2d 577, 580 (Mo.App.1983).

■ Before discussing the evidence, we note that the employer has moved to supplement the record on appeal. There was additional medical evidence before the administrative law judge not found in the record certified by the commission and filed before us. That evidence was inadvertently omitted from the record considered by the commission. This court reviews only the commission's findings and not the findings of the administrative law judge. *Sims v. Bestway Cleaning Co.*, 701 S.W.2d 791, 792 (Mo.App.1985). The only record we are entitled to consider on appeal is that record certified by the commission as containing all documents and papers on file in the matter. § 287.495.1. The omitted medical evidence was not before the commission and could not have formed the basis of the commission's decision. Consequently, we do not consider that evidence although urged to do so by the employer.

The record before us shows that claimant worked for approximately thirteen years as a cook and dishwasher for McCord's Cream Castle. Following surgery in 1984, she filed a similar claim for disability of her right wrist and left elbow resulting from carpal tunnel syndrome. The earlier claim was settled in April, 1985, for a lump sum payment of $10,000.

The present claim is based upon the condition of claimant's left wrist and right elbow. She testified the discomfort from her present condition began about October 1, 1985. She first experienced sharp pain and swelling of her left wrist. A few weeks later, while lifting dishes, she experienced pain and swelling of the right elbow. Prior to the onset of this discomfort, claimant testified her duties required her to lift a heavy skillet weighing fifteen to twenty pounds and lift stacks of dishes averaging thirty pounds each. The skillet only had to be lifted once each day. However, the lifting of dishes involved several stacks of dishes which were lifted from a cart to a table and then lifted from the table into a sink. The process of lifting the stacks of dishes would be repeated five or six times daily.

The critical medical testimony before the commission, and before us on appeal, is that of Dr. Thomas Waltrip. His testimony was the only medical evidence before the commission. He diagnosed claimant's current condition as bilateral carpal tunnel syndrome. He further testified that he believed she "developed [the syndrome] at her work as a dishwasher and handling dishes." At no point in his testimony did he equivocate, but always maintained that her condition was "occupationally related." Although Waltrip had been claimant's physician for some years prior to 1985, the condition which he found in her left wrist and right elbow did not exist prior to October of that year. The condition he found included swelling, shaking, tenderness, and inflammation involving the left wrist and right elbow.

Based on this evidence, the commission made no independent findings but adopted the administrative law judge's opinion. The critical issue for the administrative law judge was whether the employee's evidence was sufficient to establish an accident or occupational disease. The administrative law judge made the following findings:

> I find employee's evidence of washing dishes and lifting utensils used in food preparation were not specified inherently dangerous tasks that followed a fixed pattern of successive, traumatic repetitive body movements happening within time sufficient to manifest pathological deterioration of employee's body structure.
>
> I further find employee's bilateral carpal syndrome was caused by naturally progressive physical effects of duties as a cook and dishwasher and not the result of accident ... or, an incidence of occupational disease....

Notwithstanding the finding that claimant's condition was the result of her work, the administrative law judge and the commission denied relief on the basis that there was no occupational disease.

The statute defining occupational disease states:

A disease shall be deemed to arise out of the employment only if there is apparent to the rational mind upon consideration of all the circumstances a direct casual [sic] connection between the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment and which can be fairly traced to the employment as the proximate cause, and which does not come from a hazard to which workers would have been equally exposed outside of the employment. The disease must be incidental to the character of the business and not independent of the relation of employer and employee. The disease need not have been foreseen or expected but after its contraction it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence.

§ 287.067.1.

■ Contrary to the ruling adopted by the commission, the existence of an occupational disease does not turn on whether the claimant contracted it while performing "specified inherently dangerous tasks that followed a fixed pattern of successive, traumatic repetitive body movements happening within time sufficient to manifest pathological deterioration of employee's body structure." An occupational disease exists when a peculiar risk or hazard is inherent in the work conditions and a disease follows as a natural result. *Collins v. Neevel Luggage Mfg. Co.*, 481 S.W.2d 548, 552 (Mo.App.1972).

■ Whether a particular employment involves a peculiar risk or "special quality" is determined from two criteria: "(1) whether there was an exposure to the disease—carpal tunnel syndrome—which was greater than or different from that which affects the public generally, and (2) whether there was a recognizable link between the disease and some distinctive feature of the claimant's job which is common to all jobs of that sort." *Jackson v. Risby Pallet and Lumber Co.*, 736 S.W.2d 575, 578 (Mo. App.1987).

The legal standard applied by the commission in determining the existence of an occupational disease in this case was wrong. The commission apparently required claimant to prove that the tasks she performed were "inherently dangerous" and that she had succumbed to the condition because of a "fixed pattern of successive, traumatic repetitive body movements." Consequently, we reverse the order of the commission and its finding that claimant does not suffer from an occupational disease.

On remand the commission shall review the evidence for the purpose of determining whether, when applying the proper standard for determining the existence of occupational disease, claimant's condition is compensable. In reviewing the evidence, we leave to the commission whether to consider the omitted medical evidence.

CROW, P.J., and GREENE, J., concur.