Claude McCOWAN, Deceased, Mary Ann McCowan, Respondent,

v.

CITY OF RIVERSIDE, Missouri, Appellant.

No. WD 49189.

Missouri Court of Appeals, Western District.

Jan. 10, 1995.

Michael L. Wilson, Kansas City, for appellant.

David Lee Wells, North Kansas City, for respondents.

Before HANNA, P.J., and BRECKENRIDGE and SMART, JJ.

HANNA, Presiding Judge.

Employer, the city of Riverside, appeals the decision of the Labor & Industrial Relations Commission (Commission) awarding death benefits to the deceased employee's widow. The sole issue before the ALJ, the Commission and this court is whether there was a causal connection between Mr.

McCowan's work activity and his sudden cardiac death.

Mr. McCowan went to work for the city of Riverside, Missouri, in November 1987, as a city laborer, maintenance man and snowplow operator. On December 14, 1987, a bad snowstorm covered Riverside and, for two days, produced a great deal of blowing and drifting snow. On December 15, Mr. McCowan returned to work to plow snow and, at approximately 9:22 a.m., he made a radio call to the Riverside dispatcher and said, "I am crossways on 50th Street." He was told that the city had a medical emergency and all of the police officers were busy and that as soon as one was free the dispatcher would send help.

Approximately thirty minutes after the radio call, police officers arrived to provide assistance. When they arrived, the snowplow was on fire and they found Mr. McCowan dead inside the cab[1]. The city's snowplow, which is mounted on a dump truck, was found on a hill sideways across the road. The plow was facing north and the salt spreader had come to rest on the south side of the road. The rear of the snowplow had slid off of the road and into the south bank. The rear tires of the vehicle had ground down to the dirt and had thrown the dirt back onto the mud flaps. The issue at the hearing was whether the stress of the snowplow accident was causally related to his subsequent death.

The testimony of two doctors, Drs. Jay Dix and James Davia, was presented at the hearing before the ALJ by deposition. Neither had seen or treated the deceased before his death, and both testified regarding causation. Dr. Dix, who testified on behalf of the claimant, specializes in forensic pathology and is a professor at the University of Missouri–Columbia School of Medicine. He is the medical examiner for Boone and Callaway Counties. Dr. Davia, who testified for the employer, practices internal medicine with a sub-speciality in cardiovascular disease. Without repeating the extensive and impressive medical Curriculum Vitae of the two physicians, it is sufficient to observe that they both had extensive backgrounds in teaching, consultation, writing and professional experience.

In addition to the depositions of the two physicians concerning the causal connection between Mr. McCowan's work activities and his death, there were autopsy findings, medical records of a treating physician, a postmortem examination by Dr. Bridgens, and a toxicology lab report by chemist Charles Johnson of the University of Missouri. The only live testimony presented was that of the deceased's brother-in-law, who took photographs at the scene and described the scene, the truck and tire marks, the deceased's wife, and police officer James Baughman of the Riverside Police Department. Generally, they testified as to facts other than the causal connection.

With regard to causation, Dr. Dix testified that the snowplow sliding off the road into the ditch created stress which, to a reasonable degree of medical certainty, was a contributing factor to his death. While acknowledging that people with bad hearts can have heart attacks at any time in a stressful or non-stressful situation, Dr. Dix testified that this amount of stress could contribute to the death of a person who had a heart in such condition as Mr. McCowan's.

Dr. Davia's interpretation of Mr. McCowan's pre-employment electrocardiogram, medical history and autopsy revealed that Mr. McCowan had four distinct conditions that predisposed him to sudden cardiac death. Specifically, the pre-employment electrocardiogram revealed the presence of "Q–Waves" and a prolonged "Q–T interval," both of which are indicators of previous myocardial infarctions. Additionally, Dr. Davia identified a significantly enlarged heart muscle (heart hypertrophy) and severe atherosclerosis of the coronary arteries. He further noted that the autopsies performed by Drs. Bridgens and Dix both revealed scars on Mr. McCowan's heart indicative of old myocardial infarctions, which is the death of heart muscle as a result of diminished blood

---

1. It is undisputed that Mr. McCowan did not die as a result of the fire. Both Drs. James Bridgens and Jay Dix performed a post mortem examination and expressed the opinion that Mr. McCowan was dead prior to the fire.

flow. Dr. Davia testified that these four predisposing factors greatly enhanced Mr. McCowan's risk of sudden cardiac death. Dr. Davia concluded that Mr. McCowan's cardiovascular condition caused his death and that the fatal arrhythmia would have happened "no matter where he was or what he was doing."

The ALJ found in favor of the employer, specifically finding the testimony of Dr. Davia more credible. The Commission, by a 2–1 vote, found Dr. Dix's testimony more persuasive and held for the claimant.[2] The employer's appeal followed.

The employer's first complaint of error is that the overwhelming weight of the evidence proved that claimant's death was a spontaneous event since he was predisposed to sudden cardiac death. The second claim of error complained that the Commission's decision was not based on competent and substantial evidence in that Dr. Dix's testimony was contradictory, speculative and lacked probative value.

 Our standard of review per § 287.495, RSMo 1986, is that an award of the Commission may be reversed only if it is not supported by substantial evidence or when it is clearly contrary to the overwhelming weight of the evidence. *Johnson v. City of Duenweg Fire Dep't*, 735 S.W.2d 364, 366 (Mo. banc 1987).

 In *Wolfgeher v. Wagner Cartage Serv., Inc.*, 646 S.W.2d 781 (Mo. banc 1983), the court held that "[w]here the performance of the usual and customary duties of an employee leads to physical breakdown or a change in pathology, the injury is compensable." *Id.* at 784. In *Wynn v. Navajo Freight Lines, Inc.*, 654 S.W.2d 87 (Mo. banc 1983), the court stated:

> [T]he right to compensation should exist if the actual triggering causes are found, on the basis of substantial evidence, to meet the "job related" or "work related" test of *Wolfgeher.*

*Id.* at 89–90. Still, the burden of proof of the causal relationship remains with the claimant. *Staab v. Laclede Gas Co.*, 691 S.W.2d 343, 345 (Mo.App.1985). In order to satisfy

that standard of proof, the death must be shown by competent and substantial evidence to have arisen out of and occurred in the course of his employment duties. *Boos v. Grey Eagle Distrib., Inc.*, 745 S.W.2d 837, 838 (Mo.App.1988).

 The causal relationship between the employee's death and his work activity was the only issue in dispute. In this case, the parties agreed that Mr. McCowan had a very bad heart, that he died of heart arrhythmia, that vehicular accidents can put stress on the heart, that stress on Mr. McCowan's heart would be dangerous, and that he may have experienced an increase in his heart rate before or at the time of his death. Dr. Dix expressed the opinion that Mr. McCowan was predisposed to a heart attack by virtue of his medical history and that the snowplow sliding off the road was a stressful event sufficient to contribute to his death.

 When the Commission is presented with two conflicting medical opinions, the issue is a fact determination to be made by the Commission. Admittedly, the testimony of Dr. Davia was substantial evidence that Mr. McCowan's death was a spontaneous event and not related to his employment. Nevertheless, if competent evidence is conflicting, resolution of that dispute lies with the Commission and is binding on the reviewing court. *Low v. ACF Indus.*, 772 S.W.2d 904, 906 (Mo.App.1989). As a reviewing court we disregard any evidence which might support a finding different from that of the Commission, even though the evidence would have supported a finding to the contrary. *Stockman v. J.C. Indus., Inc.*, 854 S.W.2d 24, 26 (Mo.App.1993). There was substantial evidence to support the Commission's decision that the work-related accident produced sufficient stress to trigger Mr. McCowan's sudden cardiac death.

Judgment affirmed.

All concur.

---

2. As noted later, the sole dispute was causation which was primarily addressed by two medical doctors, whose testimony was presented to the ALJ and Commission by deposition. Both triers of fact were in an equal position to judge the witnesses' credibility.