Evelyn DEAN, Respondent,

v.

ST. LUKE'S HOSPITAL, Appellant.

No. WD 52485.

Missouri Court of Appeals,
Western District.

Jan. 14, 1997.

John R. Phillips, Blackwell Sanders Matheny Weary & Lombardi, Kansas City, for appellant.

Patrick W. Campbell, Campbell, Haley & Turner, Kansas City, for respondent.

Before BRECKENRIDGE, P.J., and LAURA DENVIR STITH and HOWARD, JJ.

LAURA DENVIR STITH, Judge.

Appellant St. Luke's Hospital appeals the Labor and Industrial Relations Commission's award of future medical aid to Respondent Evelyn Dean. St. Luke's claims that the

award was not supported by substantial and competent evidence because Ms. Dean's doctor did not testify that it was more likely than not that she would require future medical treatment for the injury to her knee. We find that the doctor's testimony was probative and, when combined with other evidence, was adequate to show a reasonable probability of future injury. Accordingly, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Respondent Evelyn Dean was employed as a nurse by Appellant St. Luke's Hospital. On February 5, 1989, Ms. Dean injured her left knee when she attempted to lift a patient. Ms. Dean filed a Claim for Compensation for her knee injury in August 1992. The parties stipulated that the knee injury was caused by an accident arising out of and in the course of her employment, but disagreed as to the extent of her injury and the need for future medical treatment. Following an evidentiary hearing on those issues in August 1995, Administrative Law Judge ("ALJ") Rebecca S. Magruder awarded Ms. Dean temporary total and permanent partial disability benefits. She also awarded Ms. Dean past medical expenses and left open the award of medical benefits based on her finding that it was reasonably probable that Ms. Dean would need future medical aid in the form of prescription anti-inflammatory medication and other medical treatment.

The employer appealed only the award of future medical aid to the Commission. The Commission affirmed. This appeal followed.

## II. STANDARD OF REVIEW

■ We review the decision of the Commission. Our scope of review of that decision is limited: we reverse, remand, or modify only if the Commission acted in excess of its powers, the award was procured by fraud, the facts found by the Commission do not support the award, or there was not sufficient competent evident to support the award. § 287.495, RSMo 1994; *Johnson v. Denton Constr. Co.*, 911 S.W.2d 286, 288 (Mo. banc 1995); *Martin v. City of Independence*, 625 S.W.2d 940, 941 (Mo.App.1981). We review the entire record in the light most favorable to the Commission's findings. *Wright v. Sports Associated, Inc.*, 887 S.W.2d 596, 598 (Mo. banc 1994); *Johnson v. City of Duenweg Fire Dept.*, 735 S.W.2d 364, 366 (Mo. banc 1987). We do not substitute our judgment for that of the Commission, and we defer to the Commission on issues such as the weight and credibility to be given to the witnesses' testimony. *Johnson v. Denton Constr. Co.*, 911 S.W.2d at 288; *Martin*, 625 S.W.2d at 941.

## III. THE COMMISSION'S AWARD OF FUTURE MEDICAL AID WAS SUPPORTED BY SUFFICIENT COMPETENT EVIDENCE

St. Luke's argues that the Commission's determination to award future medical aid to Ms. Dean was not supported by substantial and competent evidence because the only testifying physician could not state that it was more likely than not that Ms. Dean would require future medical treatment.

■ It is well-settled that "in permanent partial disability cases, the Commission's award may contain an allowance for the cost of future medical treatment." *Polavarapu v. General Motors Corp.* 897 S.W.2d 63, 65 (Mo.App.1995). As is true of the other material elements of her claim, the burden was on Ms. Dean to prove her entitlement to an allowance for such treatment. *Meilves v. Morris*, 422 S.W.2d 335, 339 (Mo.1968).

■ The standard for proof of entitlement to an allowance for future medical treatment cannot be met simply by offering testimony that it is "possible" that the claimant will need future medical treatment. *See, e.g., Modlin v. Sun Mark, Inc.*, 699 S.W.2d 5, 7 (Mo.App.1985). Neither is it necessary, however, that the claimant present conclusive evidence of the need for future medical treatment. *Sifferman v. Sears, Roebuck & Co.*, 906 S.W.2d 823, 828 (Mo.App.1995). To the contrary, numerous workers' compensation cases have made clear that in order to meet their burden claimants such as Ms. Dean are required to show by a "reasonable probability" that they will need future medical treatment. As *Tate v. Southwestern Bell Tel. Co.* stated:

The claimant does not have to absolutely establish the elements of her case. It is sufficient if she shows them by reasonable probability. *"Probable" means founded on reason and experience which inclines the mind to believe but leaves room for doubt.* *Tate,* 715 S.W.2d 326, 329 (Mo.App.1986) (emphasis added). *See also Sifferman,* 906 S.W.2d at 828; *Tibbs v. Rowe Furniture Corp.,* 691 S.W.2d 410, 413 (Mo.App.1985). In determining whether this standard has been met, the court should resolve all doubt in favor of the employee. *Tibbs,* 691 S.W.2d at 413; *Ellis v. Western Electric Co.,* 664 S.W.2d 639, 641 (Mo.App.1984).

While the parties agree that the above standards govern, they disagree as to their application to this case. St. Luke's argues that the right to future medical aid must stand or fall solely on the medical testimony offered by Ms. Dean's treating physician, Dr. Charles Rhoades. St. Luke's says that because Dr. Rhoades was unable to state with certainty whether Ms. Dean was more likely than not to need future treatment, and because he could not assign a percentage to the likelihood that she would need future treatment, then his testimony is inadequate to support the award of future medical aid, and no other basis for awarding such aid was shown.

We disagree. We believe that Dr. Rhoades' testimony, in combination with that of Ms. Dean and of the medical records introduced below, was adequate to meet Ms. Dean's burden of proving a reasonable probability of a need for future medical aid. In so determining, it should be recalled that the Commission did not award Ms. Dean a specific sum to cover the cost of a specific anticipated future treatment or surgery. To the contrary, it simply left open the medical aid issue so that if, in the future, Ms. Dean has medical costs that she can show are causally related to the injury she suffered at work, then she will be able to recover their cost.

No doubt for this reason, a number of cases have recognized that "a claimant is not required to present evidence of specific medical treatment or procedures which will be necessary in the future in order to receive an award for future medical care." *Polavarapu,* 897 S.W.2d at 66. Such a requirement "may put an impossible and unrealistic burden upon the employee." *Bradshaw v. Brown Shoe Co.,* 660 S.W.2d 390, 394 (Mo.App.1983). All that is required is that the finding of a need for future medical treatment be shown to be reasonably probable and be founded on reason and experience. *Sifferman,* 906 S.W.2d at 828.

We agree with the ALJ and the Commission that such evidence was offered here when the testimony of Dr. Rhoades is combined with that of Ms. Dean and with the evidence of Ms. Dean's need for prescription anti-inflammatories to control her injury. More specifically, Ms. Dean testified, and Dr. Rhoades' records showed, that when Ms. Dean first injured her knee in February 1989, he prescribed anti-inflammatory medication for her and referred her to a physical therapist for home exercises. This conservative treatment proved to be ineffective, however, and Dr. Rhoades was required to perform arthroscopic surgery to remove scar tissue from Ms. Dean's knee in April 1989.

In October 1989, Dr. Rhoades ordered Ms. Dean to undergo physical therapy. She continued to have pain, however, and her knee would periodically lock and catch. To relieve this situation, in December 1989, Dr. Rhoades performed lateral release surgery. After this second surgery, Ms. Dean testified that she did not have as much catching and locking, but she continued to suffer from popping in her knee and to experience persistent pain despite the fact that Dr. Rhoades again referred her to a physical therapist for multiple weekly appointments and continued her on prescription anti-inflammatories. In September 1990, Ms. Dean was released to home physical therapy, and she continued taking prescription anti-inflammatories.

In November 1993, because of continued pain in her left knee and because of family responsibilities, Ms. Dean reduced her work hours from full-time to part-time. She did not have an office visit with Dr. Rhoades after March 1994, but she did see him often in the hospital where both worked, and they discussed her medical situation on those occasions. He was aware of her continued pain

and said that he was not surprised that she had not made an appointment to see him as he kept well apprised of her condition through their informal visits in the hospital. Ms. Dean continued taking anti-inflammatory medication except when pregnant or nursing.

Dr. Rhoades records show that at the time of examining Ms. Dean in August 1992, he wrote that he thought it was "very likely" that she would require additional ·medical treatment in the future. In particular, he noted that it was "very likely" she would require an operative treatment called an arthroscopic debridement at some point in her life.

In his deposition, Dr. Rhoades reaffirmed that he believed that it was still very likely that she would need future surgery, and further said that the triggering event for that surgery would be when the pain was so great that Ms. Dean could not stand it any more. He said that he could not quantify what he meant by saying that it was very likely that she would require future medical treatment, however, and would not say whether this meant that there was a 20%, 40%, or 60% chance of surgery, or even if the need for surgery was more probable than not. He said that such precise quantification was impossible in this type of injury.

 Prior cases have noted that testimony such as that of Dr. Rhoades, which speaks in terms of likelihood rather than certainty, is admissible and probative. *See, e.g. Goodwin v. Farmers Elevator & Exchange,* 933 S.W.2d 926 (Mo.App. E.D. 1996) (opinion testimony as to cause of employee's injury, phrased in such terms as "in all likelihood" and "I think," was admissible and probative).

As we stated in *Martin v. City of Independence,* 625 S.W.2d 940 (Mo.App.1981), such testimony, particularly when combined with other credible evidence of a nonmedical character, can be enough to support an award:

A doctor's use of such words as "might", "could", "likely", "possible" and "may have", *coupled with other credible evidence of a non-medical character,* such as a sequence of symptoms or events corroborating the opinion, is sufficient to sustain an award.

*Id.* at 941 (emphasis added) (quoting 3 Arthur Larson & Lex K. Larson, Workmen's Compensation Law, § 80.32 (1996)).[1]

Here, Ms. Dean presented just such "other credible evidence of a non-medical character". She testified that she has been continuously taking prescription anti-inflammatory medication since February 1989, except when she was pregnant or nursing,[2] and that she further was performing home physical therapy in an effort to limit the effects of the injury. She testified that she nonetheless continues to have popping and pain in her knee, although it has become less frequent after the second surgery. Ms. Dean said that the pain she was experiencing was a six or seven on a scale of zero to ten.

St. Luke's maintains that we should not consider Ms. Dean's testimony in determining whether an award of future medical aid was proper, as she was not competent to state whether she would need future treatment, and that absent her testimony the evidence was inadequate. We disagree, and hold that the Commission properly considered her testimony. Dr. Rhoades stated that when and whether Ms. Dean needed treat-

---

1. *See also Barr v. Vickers, Inc.,* 648 S.W.2d 577 (Mo.App.1983) (testimony that it was "highly likely" injury was caused by silicosis exposure was adequate when considered in combination with other more definite testimony). *Compare Kinealy v. Southwestern Bell Tel. Co.,* 368 S.W.2d 400, 404 (Mo.1963) (testimony that causation was "extremely likely," taken by itself, "brings his testimony to the borderline of probability" but when considered in combination with other evidence in that case it was evident the doctor was really just talking about possibilities).

2. St. Luke's also argues that the finding below that Ms. Dean took prescription anti-inflammato-

ries is not supported by substantial evidence, in that the records show that the medications she took were over-the-counter medications such as Motrin. Ms. Dean herself testified that the medications she took were by prescription, and the medical records show that at one point the doctor prescribed Clinoril for her, a prescription medication. The ALJ clearly accepted this evidence, as she was free to do, and the Commission affirmed her determination based on this evidence that the medication Ms. Dean took was prescription medication. That determination was supported by substantial and competent evidence.

ment depended largely on her tolerance for the pain she was experiencing. The amount of pain she was experiencing and how well she tolerated it were thus important evidence relevant to the determination of her need for future treatment, and were certainly matters on which she was competent to testify.

The Commission found, based on all of the above evidence, that there was a reasonable medical probability that Ms. Dean would need continuing medical aid in the form of a doctor to supervise continued prescriptions of anti-inflammatory medication, as well as other future medical treatment as her knee worsens. We cannot say that this determination was not supported by substantial and competent evidence on the record as a whole.

For these reasons, the judgment is affirmed.

All concur.