**Jack Duane WREN and Janice J. Wren, Appellants,**

v.

**Robert E. VACA and American Driver Leasing, Inc., Respondents.**

**No. WD 51647.**

Missouri Court of Appeals, Western District.

April 16, 1996.

As Modified May 23, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 28, 1996.

Steven White, Independence, for appellants.

Robert Gould, John S. Rollins, Kansas City, for respondents.

Before SPINDEN, P.J., and BERREY and LAURA DENVIR STITH, JJ.

SPINDEN, Presiding Judge.

Truck driver Robert E. Vaca had two masters. His employer, American Driver Leasing, Inc. (ADL), leased him to others to drive their tractor-trailer rigs. ADL leased Vaca to Mo–Kan Express, and he was driving a rig on I–70 in Lafayette County on April 3, 1991, for Mo–Kan when he fell asleep. The rig left the highway and Mo–Kan's employee, Jack Wren, who was sleeping in the tractor's sleeping compartment, was injured. Wren sued Vaca and ADL.

ADL contends that it did not exercise enough control over Vaca to be vicariously liable for his negligent operation of the rig for Mo–Kan. Wren was the senior driver in charge of directing Vaca as the two made deliveries for Mo–Kan.

The circuit court agreed with ADL and granted its motion for summary judgment. We affirm the circuit court's summary judgment.

The undisputed facts established that Vaca received his pay from ADL which had leased

Vaca to Mo–Kan in October 1990. Mo–Kan controlled Vaca's day-to-day duties. Through Wren, it told Vaca when to report for work and where to go and how to perform his duties. ADL paid for Vaca's health insurance, but Mo–Kan reimbursed it for this expense. ADL reserved the right to fire Vaca. It also exercised some control over its drivers by requiring them to obey its company policies and rules. It had a right to withhold payment from drivers who did not obey its policies and rules. ADL paid workers' compensation benefits for Vaca.

ADL contended, pursuant to the "borrowed servant doctrine," that Mo–Kan was vicariously responsible for Vaca's negligence, and ADL was shielded from liability. The circuit court agreed. Wren contends on appeal that he presented evidence in response to ADL's motion for summary judgment which placed the issue in dispute.

■■■ The borrowed servant doctrine can block a general employer's vicarous liability for its · employee's negligence. The doctrine provides that "in the leasing of equipment and operators to another, the mere fact that the general employer continues to pay the operator's wages, the gas, oil and other expense, and is responsible for maintenance, does *not* prevent the operator from becoming an employee of the lessee." *Ballard v. Leonard Brothers Transport Company, Inc.,* 506 S.W.2d 346, 351 (Mo.1974) (emphasis in original). The courts refer to the lessor in such situations as the general employer and to the lessee as the special employer. The elements of the doctrine are:

(a) [C]onsent on the part of the employee to work for the special employer; (b) actual entry by the employee upon the work of and for the special master pursuant to an express or implied contract so to do; and (c) power of the special employer to control the details of the work to be performed and to determine how the work shall be done and whether it shall stop or continue.

*Id.* at 350. When, as in this case, the general employer asserts the doctrine as a defense by a third party to recover for injuries caused by the employee in performing the special employer's work, the general employer must also establish that it totally relinquished any right of control over the employee's performance of the particular work at issue. "To escape liability the general employer must surrender full control of the employee in the performance of the *particular* work, it not being sufficient if the servant is partially under the control of a third party." *Koirtyohann v. Washington Plumbing & Heating Company,* 471 S.W.2d 217, 219 (Mo.1971)(emphasis added).

■ ADL established that Mo–Kan controlled the details of Vaca's work. It told him when to drive, where to drive, how to drive, and how to load and unload his cargo. This was sufficient to relieve ADL of liability for Vaca's negligent operation of the tractor-trailer rig.

Wren countered this with evidence that ADL paid for Vaca's workers' compensation and its benefits. This, he argues, established conclusively that ADL was Vaca's employer because § 287.020.1, RSMo 1994, governing workers' compensation, says, "The word 'employee' as used in this chapter shall be construed to mean every person in the service of any employer, as defined in this chapter, under any contract of hire, express or implied, oral or written, or under any appointment or election, including executive officers of corporations." This establishes nothing. No one denies that ADL is Vaca's employer. The issue is whether Mo–Kan became Vaca's special employer so as to assume vicarious liability for his negligence.

■ Wren then seizes on a statement in *dicta* in *Brickner v. Normandy Osteopathic Hospital,* 746 S.W.2d 108, 114 (Mo.App.1988): "In order to escape liability, the general employer must have relinquished all control and authority over the employee to the special employer." *Id.* at 114. Wren, however, fails to read the court's explanation earlier in its opinion that the general employer must relinquish control over the *particular* work at issue. *Id.* at 112–13. ADL's requiring Vaca to obey its general policies and rules had no relevance to the particular work demanded by Mo–Kan. Vaca's obedience of ADL's commands had no bearing on his obedience to Mo–Kan's demands. " 'If . . . the temporary employer exercises such control over

the conduct of the employee as would make the employee his servant were it not for his general employment, the employee as *to such act* becomes a servant of the temporary employer.'" *Id.* at 113 (*quoting Restatement (Second) of Agency* § 227 comment b, c (1958)) (emphasis added). Vaca did not drive unless Mo–Kan told him to drive. ADL had no right to assert control over when Vaca drove, where he drove, or how he drove.[1]

The circuit court correctly granted summary judgment for ADL.

LAURA DENVIR STITH, J., concurs.[2]

---

**1.** ADL did require Vaca to report any "lay overs" and other such general matters, and ordered him to sign a false accident report. We do not discern this as having any relevance to the details of the trips Mo–Kan required of Vaca.

**2.** Although Judge Berrey participated in oral arguments and concurred with the result, he did not review this opinion before hand down. He was not available because of illness.